McCarthy, J.
(concurring in part and dissenting in part). I agree with the majority’s resolution of this matter on all issues except the no contest clause in the 2011 will. Petitioners Sonya J. Stack and Rebecca L. Adrian (hereinafter collectively referred to as petitioners) violated that clause. On that basis, I respectfully partially dissent.
“There is no basis to disregard express terms in a will, absent ambiguity” (Matter of Clark, 304 AD2d 1034, 1034 [2003] [citation omitted]). “The paramount consideration in will construction proceedings is the testator’s intent” (Matter of Singer, 13 NY3d 447, 451 [2009] [citation omitted]), and “ ‘[w]here language is unambiguous and supports a reasonable meaning, it must be accepted as manifesting the grantor’s intention; the court is bound and the canons of construction do not come into play’ ” (Matter of Clark, 304 AD2d at 1034, quoting Matter of Gouraud, 85 AD2d 342, 344 [1982], affd 59 NY2d 925 [1983]; accord Matter of Rodrigues, 33 AD3d 926, 927 [2006]). The separate rule that we strictly construe no contest clauses (see Matter of Singer, 13 NY3d 447, 451 [2009]; Matter of Fairbairn, 46 AD3d 973, 974 [2007], lv denied 10 NY3d 708 [2008]) does not allow this Court to disregard a “testator’s expressed intent” as manifested in such a clause, as long as the remainder of the will does not render that clause ambiguous (Matter of Singer, 13 NY3d at 454 [Graffeo, J., concurring]; see e.g. Matter of Fairbairn, 46 AD3d at 974). The majority is correct that a will must be read as a whole, rather than parsing individual words or phrases out of context, to discern the testator’s intent from the meaning of the words used in that instrument (see Matter of Bieley, 91 NY2d 520, 525 [1998]). The majority only discerns a *150 single dominant dispositional scheme and uses it to interpret every portion of the will so as to carry out that scheme. In doing so, however, the majority ignores the possibility — and here, the fact — that a testator may plainly include alternative or contingent dispositional schemes in a will.
The no contest clause included in decedent’s will unambiguously forbids the action taken by petitioners. As the movants for summary judgment dismissing Neil Prevratil’s objection that petitioners should not benefit under the will because they had violated the no contest clause, petitioners had the burden of establishing, as a matter of law, either that they did not violate the no contest clause in the will or that any portion of the clause that they violated was void as against public policy (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Matter of Siegel, 90 AD3d 937, 939-940 [2011]). The no contest clause in the 2011 will states, in part:
“If any beneficiary hereunder shall contest . . . any provision [of this will], or shall institute or join in . . . any proceeding ... to prevent any provision [of the will] from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), then all benefits provided for such beneficiary are revoked.”
This portion of the clause goes further than a more general prohibition to contesting probate or attacking the validity of the will, as it unambiguously expresses the intent to further prohibit beneficiaries from contesting any individual provision of the will or from joining in “any proceeding ... to prevent any provision [of the will] from being carried out in accordance with its terms” (compare Matter of Rimland, 2003 NY Slip Op 50966[U], *3-4 [2003], and Matter of Stralem, 181 Misc 2d 715, 717 [1999], with Matter of Singer, 13 NY3d at 454, and Matter of Fairbairn, 46 AD3d at 974).
Turning to the other provisions of the will, one nominates petitioner Frank A. Prevratil as executor of decedent’s estate and Sheri Prevratil as successor executor.[1] Upon the motion *151 made by petitioners and Charles Prevratil (hereinafter collectively referred to as the proponents) for summary judgment dismissing Neil Prevratil’s objections, the proponents submitted evidence that petitioners had cross-petitioned for probate of the 2011 will and had sought issuance of letters c.t.a. to themselves,[2] alleging in a sworn statement that the nominated executor and successor executor were unfit to administer the estate because they had not yet sought to probate the will and had refused to return petitioners’ phone calls. Having joined in a proceeding in which one of the express purposes was to have the nominated executors disqualified, petitioners both contested the nomination provision of the will and attempted “to prevent [that] provision [in the will] from being carried out in accordance with its terms.”
A reading of the remainder of the will does not alter this result, because the entirety of the will does not render the meaning of the relevant portions of the no contest clause ambiguous. The majority opines that “[q]uite obviously, what decedent desired was that the entirety of his estate be distributed equally to, and remain with, the proponents.” However, as a matter of necessity, every will that contains a no contest clause that has the potential to deny benefits to an individual must also contain other provisions making that individual a beneficiary.[3] This scenario on its own does not create any ambiguity as to a dominant dispositional scheme, as it is reasonably interpreted as conveying contingent rather than conflicting intentions (see Matter of Ragone, 116 Misc 2d 993, 998-999 [1981] [finding that the existence of a residuary clause does not create an ambiguity as to a *152 testator’s intended dispositional scheme where that clause was reasonably interpreted as only applying in the contingent scenario where other provisions of the will did not dispose of the entirety of the estate in some alternative manner], mod 87 AD2d 457 [1982], revd 58 NY2d 864, 866 [1983] [reversing the Appellate Division and affirming Surrogate’s Court “for reasons stated” in Surrogate’s Court’s decision]). In addition, a reading of the entirety of the will only reinforces that decedent intended for the prohibitions described in the no contest clause to apply to “any beneficiaries,” including petitioners. Absent the scenarios described in the no contest clause, and as the majority notes, decedent intended to distribute the entirety of his estate between three people, two of whom are petitioners. Had decedent intended to apply the no contest clause only to Charles Prevratil, the third beneficiary, decedent could have easily named him rather than describing the clause as applying to “any beneficiary.” Further, the rest of the will does not contain any language that could reasonably be read as addressing the scenarios described in the no contest clause. Therefore, petitioners’ actions violated the no contest clause according to its plain language.[4]
The majority never states that any portion of the will renders the plain language of the no contest clause ambiguous. Instead, the majority notes that this Court has a duty to avoid “isolated and overly literal reading[s]” that reduce interpretation to “a simple exercise in semantics,” because such readings risk misinterpreting a testator’s intent (internal quotation marks and citation omitted). A reading based on the plain language of the no contest clause is isolated by necessity rather than design, because the will does not otherwise address the actions that *153 were prohibited by the no contest clause or, alternatively, suggest that petitioners might not be subject to that clause. The reading is literal to the extent that it gives effect to plain language[5] and semantics to the extent that it affords each of the quoted portions of the no contest clause its single reasonable meaning. Disregarding the plain and literal meaning of such language when discerning intent, as the majority appears to do, renders the plain language of the no contest clause meaningless.[6] In the search for a testator’s intent, “[w]ords are never to be rejected as meaningless or repugnant if . . . they may be made consistent and significant. Excision is a ‘desperate remedy’ ” (Matter of Buechner, 226 NY 440, 443 [1919, Cardozo, J.] [citation omitted]; accord Matter of Gulbenkian, 9 NY2d 363, 370 [1961]). Because the no contest clause is reconcilable with the remaining language of the will under a dominant scheme that provides for different dispositions upon different contingent events, there is no authority that would support a construction that, in an effort to discern decedent’s intent, excises the literal and plain language portions of the no contest clause as meaningless.
Turning now to the issue of public policy, petitioners failed to establish that, as a matter of law, any portion of the no contest clause that they violated is contrary to public policy. Statutory eligibility requirements for the fiduciary of an estate limit a testator’s choice of executor (see SCPA 707). In light of these statutory eligibility requirements, I do not believe that public policy allows testators to entirely prohibit beneficiaries from bringing the ineligibility of nominated executors to the attention of the courts, which would frustrate the ability of those courts to conduct independent inquiries into such a matter (see generally Estate of Ferber, 66 Cal App 4th 244, 254, 77 Cal Rptr 2d 774, 779 [1998] [noting that even though courts have a duty of oversight as to the administration of an estate, “as a practi *154 cal matter, (they) lack the resources to scrutinize every matter . . . (and) must rely on beneficiaries to be aware of the facts and raise cogent points”]).
Public policy as to the fitness of a nominated executor is not entirely analogous to that expressed in EPTL 11-1.7. As the majority notes, EPTL 11-1.7 establishes that, generally, public policy contravenes “[t]he attempted grant to an executor . . . [of] exoneration . . . from liability for failure to exercise reasonable care, diligence and prudence.” First, EPTL 11-1.7 deals with executors who have fiduciary duties; someone who is merely nominated as executor does not have the duties mentioned in EPTL 11-1.7 (see generally Matter of Mandelbaum, 7 Misc 3d 539, 540 [2005]). Among other reasons that a nominated executor does not have such duties is that he or she may have no notice of the potential appointment or, alternatively, of a testator’s death (compare SCPA 1414 [1], [4]), and further, it would be unreasonable to attribute to a nominated executor the duties of a fiduciary without also distributing the corresponding powers.
Not only is there a meaningful difference between executors and nominated executors but, for the purposes of the testator’s choice of executor, breach of duty claims are not like unfitness claims. While “it is not every breach of fiduciary duty that will warrant removal [of an executor]” (Matter of Duke, 87 NY2d 465, 473 [1996] [internal quotation marks and citations omitted]), every finding of unfitness renders a nominated executor ineligible (see SCPA 707). The former can simply be an attack on a fiduciary’s execution of his or her duties, or can even seek to encourage the fiduciary to continue serving, although in a more diligent and conscientious manner, but the latter is necessarily a direct attempt to undermine the testator’s choice of executor.
Public policy does not weigh entirely in favor of questioning a testator’s choice of executor. While statutory eligibility requirements exist, “[i]t may be broadly stated that the common law favors the rule that no restriction should be placed upon the choice of an executor” (Matter of Leland, 219 NY 387, 393-394 [1916], supra; cf. Matter of Duke, 87 NY2d at 473 [“Removal of a fiduciary constitutes a judicial nullification of the testator’s choice and may only be decreed when the grounds set forth in the relevant statutes have been clearly established”]). Therefore, public policy in this situation requires a balance between the goals of allowing proper inquiries into a nominated executor’s *155 eligibility while dissuading unwarranted and costly second-guessing of a testator’s choice of executor. This proper balance requires that beneficiaries be allowed to argue to courts that nominated executors are ineligible, regardless of testators’ intentions to the contrary, but only to the extent that such contest is based on probable cause (cf. EPTL 11-1.7, 3-3.5 [b] [1]; see generally Matter of Singer, 13 NY3d at 452 [acknowledging that the statutory protections from no contest clauses provided in EPTL 3-3.5 are “not exclusive”]; Restatement [Second] of Property [Donative Transfers] § 9.2, Comment c).[7] Accordingly, the specific portion of the no contest clause here that seeks to withhold benefits from any beneficiary who, upon probable cause, attempts to replace the nominated executors due to their ineligibility is without effect.
Turning to the motion, petitioners signed a sworn statement that Frank A. Prevratil and Sheri Prevratil were both unfit to serve as executor of decedent’s estate because the nominated executors “[were] aware of the [w]ill dated May 24, 2011 executed by [d]ecedent before his death but ha[d] chosen not to file said [w]ill for probate with the [c]ourt and ha[d] refused to return telephone calls by [petitioners to them.”[8] On a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party, according him or her the benefit of every reasonable inference (see William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013]; McGrath v George Weston Bakeries, Inc., 117 AD3d 1303, 1305 [2014]). Under this standard of review, the evidence submitted was insufficient to establish as a matter of law that petitioners had probable cause to allege that Frank A. Prevratil and Sheri Prevratil were both “unfit for the execution of the office” at the time that petitioners requested letters c.t.a. for themselves (SCPA 707 [1] [e]; see Matter of Badore, 73 Misc 2d 471, 474 [1973]). The evidence makes no distinction between the two nominated executors and gives no factual support for petitioners’ conclusions that they had chosen not to file the will. *156 There is a reasonable possibility that such conclusions were speculative. Even if the conclusions were supported, petitioners submitted no evidence that established, as a matter of law, that the circumstances of such a choice not to probate the 2011 will would render both nominated executors unfit.
Accordingly, because petitioners failed to meet their prima facie burden, I would deny summary judgment on the fourth objection (see generally Matter of Siegel, 90 AD3d 937, 940 [2011], supra) and would remit for the parties and Surrogate’s Court to address the issue of probable cause.
Lahtinen and Garry, JJ., concur with Peters, PJ.; McCarthy, J., concurs in part and dissents in part in a separate opinion.
Ordered that the order is affirmed, without costs, and decedent’s May 24, 2011 will is admitted to probate.

. Our courts have regularly recognized the importance of a testator’s choice of executor, acknowledging that it “should be given great deference and not disregarded unless that executor is not legally qualified to act as a fiduciary” (Matter of Palma, 40 AD3d 1157, 1158 [2007]; see Matter of Venezia, 25 AD3d 717, 718 [2006]; Matter of Hunter, 6 AD3d 117, 127 [2004], affd 4 NY3d 260 [2005]; see also Matter of Leland, 219 NY 387, 393-394 [1916]). Any sympathetic reading of the will for the primary purpose of giving effect to *151 decedent’s intent requires such deference to decedent’s unambiguous preference of executors. The majority’s decision gives no weight to decedent’s intent in this regard.

. Petitioners’ attempt to probate the 2011 will did not require them to address the issue of who should administer decedent’s estate. As the majority decision illustrates, a court may probate a will without also determining who should administer the estate (see SCPA 1402 [1] [a]; see also Margaret Valentine Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1402 at 185 [stating that “(t)his section confers status to petition for the probate of a will. It does not confer any right to serve as fiduciary, but simply to offer the will for probate so the court can appoint the person nominated in the will or other appropriate fiduciary”]).

. For this reason, the majority’s emphasis that “the will expressly ‘made no [dispositional] provision[ ]’ for either Neil Prevratil or Frank A. Prevratil” only draws further attention to the fact that those individuals were not the intended subjects of the prohibitions of the no contest clause. If that provision has any other relevance, it supports the argument that decedent cared a great deal about his power to withhold gifts from individuals.

. This conclusion — that decedent intended to protect his nominated executors from attacks against their fitness to serve in such a position — is not so unreasonable that no decedent would have intended it, which might warrant disregarding the plain meaning of the relevant provisions (see generally Matter of Clark, 304 AD2d at 1034). This state’s courts have repeatedly faced testators who have unambiguously attempted to exempt nominated fiduciaries from the requirements otherwise placed on them by law (see e.g. Matter of Allister, 144 Misc 2d 994, 997-998 [1989]; Matter of Robbins 144 Misc 2d 510, 512-515 [1989]; Matter of Lang, 60 Misc 2d 232, 233-234 [1969]), testators have previously attempted to insulate their nominated executors from challenge to their service as fiduciaries (see e.g. Estate of Ferber, 66 Cal App 4th 244, 248, 77 Cal Rptr 2d 774, 776 [1998] [examining a no contest clause that denied benefits to any beneficiary who “challenge(d) the appointment of any person named as an executor”]), and commentators have specifically addressed that scenario (see Restatement [Second] of Property [Donative Transfers] § 9.2, Comment c).

. It is difficult to imagine a workable standard that would give a testator meaningful guidance for how to employ appropriately literal language, rather than overly literal language, the latter of which the majority does not recognize as conveying a testator’s intention.

. An alternative possible interpretation of the majority’s conclusion is that rather than finding that the relevant portions of the no contest clause should be attributed no meaning, their broad and plain language application should instead be narrowed. The record would provide no rational basis to assert that decedent intended to provide a particular and more narrow no contest clause, and this Court’s insertion of its own wisdom as to the proper scope of such clauses would in no way properly further the search for decedent’s intent regarding the matter.

. I note that while a more far-reaching public policy protection for ineligibility claims made in good faith would also seem reasonable in striking the appropriate balance (see Restatement [Second] of Property [Donative Transfers] § 9.2, Comment c), there appears to be no precedent in this state’s jurisprudence or statutes that would support such a protection from the reach of a no contest clause.

. Although petitioners also submitted portions of each of their sworn testimony, that testimony and their other submissions are unrelated to the fitness of the nominated executors.